[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the defendant Board of Tax Review (Board) assessing property owned by the plaintiff on the lists of October 1, 1990 and October 1, 1991.
Each side presented one witness at the trial of this case. The plaintiff's expert was Mr. Robert Morra, a licensed real estate appraiser with years of experience in the field who has testified many times as an expert witness.
The Board relied on the testimony of Gynt Grube, a senior project supervisor with the firm of Cole-Layer-Trumble Company, the firm which was hired by the Town of Stafford to conduct a property revaluation for the town. Mr. Grube is licensed by the State of Connecticut to do revaluation and also has many years of experience.
In addition to the foregoing witnesses and exhibits the Court viewed the perimeter areas of the property. The property is a triangular piece bounded by established town roads on all sides and is almost 48 acres in size.
On October 1, 1990, the Town of Stafford assessors assessed the property at $180,940.00, which represented 70% CT Page 7515 of the actual valuation of the property of $258,500.00.
The plaintiff appealed the assessment to the Board which reduced the assessment to $165,000.00 with the valuation reduced to $231,000.00.
The Board also assessed the property at $165,000.00 on the list of October 1, 1991.
The plaintiff in his appeal to this court, challenges the aforesaid assessments. He carries the burden of proving by a fair preponderance of the evidence that the assessments were excessive or illegal. A wide discretion is accorded to the assessors and unless the property is substantially overvalued resulting in an injustice to the owner, their determination of value should control. Midway Green Corporation v. Board of Tax Review, 8 Conn. App. 440, 442
(1986); and cases cited therein.
Applying the foregoing rules of law, the Court finds as follows:
The Cole-Layer-Trumble Company, in an attempt to have its revaluations as consistent as possible, established six classifications of property shown as Columns A1 through A6 on defendant's exhibit 3. The plaintiff's property was classified partially as frontage (A2), undeveloped rear residual (A3), and marsh (A4).
In its original revaluation, 19 acres was categorized as frontage, 24 acres as undeveloped and 4.9 acres as marsh. (Defendant's exhibit 5).
Upon the plaintiff's appeal to the Board, the land was reclassified to 10 acres frontage, 22 acres undeveloped and 15.94 acres as marsh. The effect of this reclassification was to reduce the appraised value from $258,500.00 to $235,800.
The plaintiff claims the market value at the times in question was $121,500.00.
First, with respect to the marsh area, the Court finds that 15 acres is wetland or marsh area. The plaintiff's expert, Mr. Morra physically examined the land, reviewed Inland Wetlands maps on file in the town offices, and utilized the consulting service of a soil scientist. It is also significant that the Board itself changed the wetland area from 4.9 to 15.9 acres (Defendant's exhibit 5). There is little question that the value of wetlands is severely CT Page 7516 diminished. And while no one can say with total certainty that all of the land can never be developed, at the very least it would require added costs for approvals, fill, etc. As noted there is standing water in the form of a stagnant appearing pond on the property.
The Court finds the value of the 15 acres of wetlands to be $4,780.00. (15.94 acres at $300.00 per acre).
There is then remaining some 32 acres of developable land.
The entire property is bounded by paved public roads. The developable land is largely woodland and the terrain may be described as rolling hills. The streets carry electrical and telephone service. It is in an attractive rural residential area with old stone walls in various places. It's value is enhanced substantially by the unusual amount of road frontage — almost one mile of frontage. Some of the wetlands areas do border portions of Patten Road and Stafford Street.
The defendant's expert explained he used an "Influence Factor" which by taking into account the amount of frontage, topographical features and the like, lead him to conclude that some 3300 feet was usable frontage. Then by dividing that frontage by 175 feet, which is the frontage required for each lot by the zoning regulations, he could determine the number of frontage lots which, according to the Cole-Layer-Trumbull formula, were valued at $22,000.00 each. But that was based on the flawed 4.9 acre marsh land measurement. Since the marsh area is, in fact, 15 acres in size and a substantial part of the wetlands is frontage, the methodology used by the defendant cannot lead to an accurate appraisal as to the value of the remaining land.
The plaintiff's expert has used a "Market Data Approach" to appraise the property in question. That method entails the examination of comparable sales, but adjusts those sales to the subject property for size, location, condition, frontage and time. Using this methodology Mr. Morra concluded that the adjusted values of the comparable sales average out to be approximately $3100.00 per acre and he concluded that the values of the potential developable land was $3500.00 per acre on October 1, 1990 and October 1, 1991.
The Court is not persuaded that the adjustments for size, location, condition, frontage and time of sale accurately reflect the fair market value of the property. Based or its viewing of the property and its own general CT Page 7517 knowledge it appears to the Court that the plaintiff's appraisals are very low. The witness's conclusions were not supported by explanations which the Court can accept, at least not totally.
The comparables relied upon had substantially less frontage in most cases, several contain wetlands (a factor which was considered separately in this case), one had no frontage at all, and one was fronted on an unpaved road.
After reclassifying the types of land from that originally established by the assessors (defendant's exhibit 5), the Board determined that 32 acres remained as developable land and appraised those 32 acres at $231,000.00. The average valuation per acre was therefore approximately $7218.00.
At the hearing before this Court, the defendant provided evidence of two comparable sales, as follows:
 1. A sale of approximately 21.8 acres on July 27, 1988. The frontage was 2140 feet. The property sold for $200,000.00 and was subdivided into seven building lots. The per acre price was $9149.00 (defendant's exhibit 6)
 2. A sale of approximately 48.5 acres on January 3, 1989, with frontage of 600 feet. The property sold for $270,000.00 and was subdivided into three lots of approximately 15 to 16 acres. The property was described as having severe topographical problems, (much steeper than the property in issue) and some swampy area. The per acre price was approximately $5500.00 (defendant's exhibit 7).
The Defendant's expert testified that the values his firm established for the several classifications of property were the result of discussions with local builders and real estate brokers, as well as his and his company's own experience and expertise in the field.
In an appeal from a decision of a Board of Tax Review, the plaintiff has the burden of proving the excessiveness of the assessments to his property. The plaintiff has not done so in this case. The 32 acres of developable land is found to have a fair market value (as of October 1, 1990 and October 1, 1991) much closer to the combined valuation placed on it by the Board of Tax Review than that reached by the plaintiff's appraiser. CT Page 7518
Accordingly, since the Court cannot conclude that the property was substantially overvalued or unreasonably overassessed, the appeal is dismissed.
BY THE COURT, Hon. Lawrence C. Klaczak Superior Court Judge